LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ADRIAN MONTER, JOHNNY RIVAS,
and IVAN ARCOS,
*on behalf of themselves,*
*FLSA Collective Plaintiffs*                              Case No:
*and the Class,*

                                   Plaintiffs,

                                                         **CLASS AND**
                                                         **COLLECTIVE**
                                                         **ACTION COMPLAINT**

                         v.

AP & SS RESTAURANT GROUP LLC
        d/b/a SEA FIRE GRILL,
A & B RESTAURANT GROUP LLC
        d/b/a BENJAMIN STEAKHOUSE,
SSAP LLC d/b/a BENJAMIN STEAKHOUSE,
B AND B RESTAURANT GROUP LLC
        d/b/a BENJAMIN STEAKHOUSE,
ALBAN PRELVUKAJ a/k/a BEN PRELVUKAJ,
SHABAN SINANAJ a/k/a BEN SINANAJ, and
ABNESHE SINANAJ,

                                   Defendants.

---

        Plaintiffs, ADRIAN MONTER, JOHNNY RIVAS and IVAN ARCOS ("Plaintiffs"), on

behalf of themselves and others similarly situated, by and through their undersigned attorneys,

hereby file this Class and Collective Action Complaint against Defendants, AP & SS

1

RESTAUANT GROUP LLC d/b/a SEA FIRE GRILL, A & B RESTAURANT GROUP LLC d/b/a BENJAMIN STEAKHOUSE, SSAP LLC d/b/a BENJAMIN STEAKHOUSE, B AND B RESTAURANT GROUP LLC d/b/a BENJAMIN STEAKHOUSE, (the "Corporate Defendants"), ALBAN PRELVUKAJ a/k/a BEN PRELVUKAJ, SHABAN SINANAJ a/k/a BEN SINANAJ and ABNESHE SINANAJ (the "Individual Defendants," and collectively with the Corporate Defendants, the "Defendants") and states as follows:

## INTRODUCTION

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages due to Defendants' unlawful deduction of a tip credit, (2) unpaid overtime premium due to Defendant's unlawful deduction of a tip credit and misclassification of non-exempt employees, (3) unpaid wages due to time shaving, (4) liquidated damages and (5) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and others similarly situated are entitled to recover from Defendants: (1) unpaid minimum wages, including those resulting from Defendants' unlawful deduction of a tip credit, (2) unpaid overtime premium due to Defendant's unlawful deduction of a tip credit and misclassification of non-exempt employees, (3) unpaid wages due to time shaving, (4) unpaid spread of hours premium, (5) statutory penalties, (6) liquidated damages and (7) attorneys' fees and costs.

3.      Plaintiffs further allege that all Hispanic employees employed by Defendants were subject to discrimination on the basis of their race and ethnicity. Plaintiffs were subjected to a hostile and racially charged work environment, exemplified by denied opportunities for promotion and frequent harassment. For Plaintiff RIVAS, this discrimination resulted in his

discharge because of his race and ethnicity. Defendants promoted, condoned and encouraged such discriminatory treatment against Plaintiffs.

4.      Accordingly, Plaintiffs seek to vindicate their rights under New York State Human Rights Law, New York Executive Law § 296 ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of the City of New York § 8-107 ("NYCHRL"). Plaintiffs allege that they are entitled to recover from Defendants for discrimination based on race and ethnicity, and in the case of Plaintiff Arcos, on the basis of age: (1) compensatory and punitive damages and (2) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7.      Plaintiff, ADRIAN MONTER, is a resident of Queens County, New York.

8.      Plaintiff, JOHNNY RIVAS, is a resident of Queens County, New York.

9.      Plaintiff, IVAN ARCOS, is a resident of Essex County, New Jersey.

10.      Defendants collectively own and operate multiple restaurants both in the United States and abroad as the "Benjamin Restaurant Group". They operate four of these restaurants in New York:

(a)   "Sea Fire Grill," located at 158 East 48th Street, New York, NY 10017;

(b)  "Benjamin Steak House," located at 52 East 41st Street, New York, NY 10017;

(c) "Benjamin Prime," located at 23 East 40th Street, New York, NY 10016;

(d) "Benjamin Steak House," located at 610 Hartsdale Road, White Plains, NY 10607; (Collectively, "the Restaurants").

11.     AP & SS RESTAURANT GROUP LLC d/b/a SEA FIRE GRILL is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and a principal place of business located at 158 East 48th Street, New York, New York 10017.

12.     A & B RESTAURANT GROUP LLC d/b/a BENJAMIN STEAK HOUSE is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and a principal place of business located at 52 East 41st Street, New York, New York 10017.

13.     SSAP LLC d/b/a BENJAMIN STEAK HOUSE is a domestic limited liability company organized under the laws of the State of New York with an address for service of process and a principal place of business located at 610 Hartsdale Road, White Plains, New York 10607.

14.     B AND B RESTAURANT GROUP LLC d/b/a BENJAMIN STEAK HOUSE is a domestic limited liability company organized under the laws of the State of New York with an address for service of process at c/o Shaban Sinanaj, 21 Bramblebrook Road, Ardsley, New York 10502 and a principal place of business located at 23 East 40th Street, New York, New York 10016.

15.     Individual Defendant, ALBAN PRELVUKAJ a/k/a BEN PRELVUKAJ is an owner of all Corporate Defendants. Defendant PRELVUKAJ exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. Defendant PREVULKAJ frequently visits each of the Restaurants. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and

control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees of the Restaurants could complain to Defendant PRELVUKAJ directly regarding any of the terms of their employment, and Defendant PRELVUKAJ would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

16.    Individual Defendant, SHABAN SINANAJ a/k/a BEN SINANAJ is an owner and principal of the Corporate Defendants. Defendant SHABAN SINANAJ exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. Defendant SHABAN SINANAJ frequently visits each of the Restaurants. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant SHABAN SINANAJ directly regarding any of the terms of their employment, and Defendant SHABAN SINANAJ would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

17.    Individual Defendant, ABNESHE SINANAJ is an owner and principal of AP & SS RESTAURANT GROUP LLC d/b/a THE SEA FIRE GRILL. Defendant ABNESHE SINANAJ exercises operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs and the Class. Defendant ABNESHE SINANAJ frequently visits each of the

Restaurants. He exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiffs, FLSA Collective Plaintiffs and the Class. At all times, employees could complain to Defendant ABNESHE SINANAJ directly regarding any of the terms of their employment, and Defendant ABNESHE SINANAJ would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees.

18.    Defendants operate the Restaurants as a single integrated enterprise, under the control of Individual Defendants. They are engaged in related activities, share common ownership and have a common business purpose. Specific facts supporting the assertion that Defendants operate as a single integrated enterprise include:

(a)    Corporate Defendants share a common purpose of owning and operating high-end restaurants in New York City.

(b)    Each of the Corporate Defendants is a member of The Benjamin Restaurant Group. The LinkedIn page for The Benjamin Restaurant Group identifies "Benjamin" Prelvukaj (Alban Prelvukaj) and "Ben" Sinanaj (Shaban Sinanaj) as owners of the group, and list Benjamin Prime, Benjamin Steakhouse, Benjamin Steakhouse White Plains and Sea Fire Grill as restaurants owned and operated by the group (See EXHIBIT A).

(c)    The Restaurants share common management and corporate executive leadership. On the "About" page on the Benjamin Steakhouse website, https://www.benjaminsteakhouse.com/nyc/about/,         the         Benjamin

Restaurant Group recounts opening both Benjamin Steakhouse locations, "becoming seafood mavens" through opening The Sea Fire Grill, and now "creat[ing] a third concept, Benjamin Prime".

(d)     The individual restaurant websites are linked by clickable icons at the bottom of each webpage. For example, clicking on the "Sea Fire Grill" icon at the bottom of the Benjamin Restaurant website, will redirect you to the Sea Fire Grill website. The same applies for the Benjamin Steakhouse icons located at the bottom of the Sea Fire Grill website (See EXHIBIT B).

(e)     Non-exempt employees are interchangeable among the Restaurants, and are frequently transferred between the Restaurants by Defendants. Plaintiff RIVAS responded to a job advertisement for Benjamin's Steakhouse but was hired to work at Sea Fire Grill instead.  Food and supplies are also often exchanged between the Restaurants. Plaintiff MONTER was often required to deliver ingredients between the Restaurants.

(f)     "Ben" Prevlukaj (Alban Prevlukaj) and "Ben" Sinanaj (Shaban Sinanaj) have been identified as the owners of Benjamin Steakhouse in multiple news article, including "From Busboys to Steakhouse Restaurateurs, Two Albanian Immigrant Entrepreneurs Hit Prime Success", published by Forbes online and "From Busboys to Bosses: Immigrant Brothers Build Mini-restaurant Empire", published by The New York Daily News (See EXHIBIT C).

19.     At all relevant times, the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

20.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs and Class members was directly essential to the business operated by Defendants.

21.     Although Plaintiffs did not work at each of Defendants' Restaurants, all are appropriately named in this Complaint through the relevant Corporate Defendants. Because the Restaurants share identical illegal wage and hour policies, they (and the relevant Corporate Defendants) are properly named on the basis of their outstanding liability to the Class members for whom Plaintiffs seek to represent.

## FLSA COLLECTIVE ACTION ALLEGATIONS

22.     Plaintiffs brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees (including but not limited to waiters, busboys, runners, servers, food preparers, bartenders and bar-backs) and improperly classified employees, including but not limited to floor managers, employed by Defendants at the Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

23.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them  (i) overtime premiums at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek and (ii) compensation for all regular and overtime hours worked due to a policy of time shaving and (iii) improperly classifying non-exempt floor

8

managers as exempt.

24.     Furthermore, a subclass of all FLSA Collective Plaintiffs who were tipped employees also suffered as a result of Defendants' failure to pay them the proper minimum wage. Plaintiffs ARCOS and MONTER are Tipped Subclass Members. Defendants were not entitled to deduct any tip credits from the wages earned by the Tipped Subclass, because they failed to satisfy all FLSA requirements for taking a tip credit. Specifically, Defendants (i) failed to provide proper notice to the Tipped Subclass that a tip credit was being claimed and (ii) required Plaintiffs and FLSA Collective Plaintiffs to spend at least two (2) hours or twenty percent (20%) of each shift engaged in non-tipped activities, and (iii) mandated tip pooling schemes without the consent of tipped employees, whereby non-tipped employees participated in the tip pool.

25.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

26.     Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees (including but not limited to waiters, busboys, runners, servers, food preparers, bartenders and bar-backs), and improperly classified employees, including but not limited to floor managers, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as

defined herein (the "Class Period").

27.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and rates of pay for each Class member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

28.    The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees comprised of waiters, runners, and busboys ("Tipped Subclass") who also number more than forty (40).

29.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class members were subject to Defendants' corporate practices of (i) failing to pay the overtime premium at the rate of one and one half times the regular rate for work in excess of forty (40) hours per workweek (ii) failing to pay for all hours worked due to a policy of time-shaving and (iii) failing to provide wage notices that were in compliance with requirements of the NYLL and (iv) improperly classifying non-exempt employees as exempt. Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts

as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

30.     Furthermore, a subclass of all Class Members who were tipped employees also suffered as a result of Defendants' failure to pay them the proper minimum wage. Plaintiffs MONTER and ARCOS and the Tipped Subclass members were subjected to Defendants' policy and practice of deducting a tip credit despite Defendants' failure to observe requirements of the NYLL, including Defendants' (i) failure to provide notice that a tip credit was being claimed, (ii) failure to record the tip credit allowance taken on periodic wage statements given to Plaintiffs and Tipped Subclass members, and (iii) policy of requiring Plaintiffs and Tipped Subclass members to spend two (2) hours or twenty percent (20%) of each shift engaged in non-tipped activities.

31.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

32.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of

individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

33.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

34.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

> a)  Whether Defendants employed Plaintiffs and the Class members within the meaning of the New York law;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay the Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay the Class members for their work;

d)  Whether Defendants provided wage statements informing Plaintiffs MONTER and ARCOS and Tipped Subclass members of the amount of tip allowance taken for each payment period;

e)  Whether Defendants paid Plaintiffs and Class members spread of hours premium payment for each shift exceeding ten (10) hours in duration;

f)  Whether Defendants required Plaintiffs and Tipped Subclass members to perform non-tipped work for more than two (2) hours, or twenty percent (20%) of each shift;

g)  Whether Defendants established the tip payment structure for Tipped Subclass members without the agreement or consent of the Tipped Subclass members;

h)  Whether Defendants provided Plaintiffs MONTER and ARCOS and Tipped Subclass Members proper notice for their claimed tip credit;

i)  Whether Defendants provided to Plaintiffs and Class members annual wage notices, as required under the New York Labor Law;

j)  Whether Defendants paid Plaintiffs MONTER and ARCOS and Tipped Subclass members the federal and state minimum wage for all hours worked;

k) Whether Defendants properly compensated Plaintiffs and Class members overtime premiums for all hours worked in excess of forty (40) under state and federal law;

l) Whether Defendants caused time-shaving by paying Plaintiffs and Class members only for those hours during which they were scheduled to work, rather than for the actual hours that they worked; and

m) Whether Defendants misclassified Plaintiff RIVAS and Class members as exempt from overtime.

## <u>STATEMENT OF FACTS</u>

### *Plaintiff ADRIAN MONTER*

35.     In or around December 2014, Plaintiff ADRIAN MONTER was hired by Defendants to work as a busboy at Defendants' "Sea Fire Grill" restaurant, located at 158 East 48th Street, New York, NY 10017. Plaintiff's employment was terminated by Defendants in or around November 2016.

36.     Throughout his employment by Defendants, Plaintiff MONTER was required to work the following double or single shifts, six days a week. A single shift was from 10:00 a.m. until 4:00 p.m. A double shift was from 10:00 a.m. until 10:00 p.m. Plaintiff MONTER worked a double shift three days a week and a single shift two days a week, for a total of five work days a week for various days of the week.  Accordingly, Plaintiff worked a total of approximately forty-eight (48) hours per week throughout his employment by Defendants. Throughout Plaintiff's employment by Defendants, he was never allowed any mid-shift breaks to eat. Similarly, FLSA Collective Plaintiffs and Class members were not permitted any mid-shift breaks to eat by Defendants.

37. Throughout his employment, Plaintiff MONTERs straight time base hourly wage was $5.00.

38. Throughout his employment with Defendants, Plaintiff MONTER was instructed by managers Alex and Aaron to clock out at the end of his scheduled shift but continue working off the clock. He would clock out at approximately 10 PM but was required to keep working until 12 AM. This happened three times a week, every time Plaintiff MONTER worked a double shift. Class members were similarly asked to regularly perform work off the clock by management.

39. Plaintiff MONTER was required to spend more than two (2) hours or twenty percent (20%) of each shift engaged in non-tipped activities. Specifically, Plaintiff and Tipped Subclass members were required to perform non-tipped tasks, including but not limited to: polishing chairs, polishing wine bottles, washing dishes and transferring ingredients between the Restaurants.

40. Defendants never provided Plaintiff MONTER with wage-and-hour notices, upon hiring, or upon any change to the information on the notice, as required by the NYLL. Similarly, Class Members were never provided with any wage notices.

41. Plaintiff MONTER and Tipped Subclass members did not receive any notice that Defendants were claiming a tip credit on tipped employees' compensation.  They were never informed in writing or orally that Defendants were claiming a tip credit allowance, and never received any notice of the amount of tip credit allowance taken for each payment period during their employment, or of the hourly rate of tip credit deduction.

42. Throughout his employment, Plaintiff MONTER was subject to a racially hostile work environment promoted by Defendants. Due to his race and ethnicity, Plaintiff ACROS

frequently suffered severe discrimination and related verbal abuse. Despite completing many tasks in a timely fashion, Plaintiff was often called lazy and incompetent, because he is Latino, by both management and non-Latino coworkers. The front of house staff, who were predominantly Albanian, often incited arguments with Plaintiff MONTER. Management always supported the Albanian staff in these arguments and would refuse to listen or trust Plaintiff MONTER.

43.    Defendant's policy of discrimination restricted Plaintiff MONTER's opportunities for promotion to higher paying positions. Plaintiff MONTER and other Latino employees noticed that busboys of Albanian descent were regularly promoted after a month of work, whereas Plaintiff MONTER himself and other Latino employees were never offered promotion opportunities despite working at the restaurant for extended periods of time. Plaintiff MONTER additionally noted that while Latino hires were required to have extensive experience in the restaurant field to be hired and were questioned intensively about their experience during their interviews, non-Latino applicants with no experience at all were hired regularly without an interview.

### *Plaintiff IVAN ARCOS*

44.    In or around March 2014, Plaintiff IVAN ARCOS was hired by Defendants to work as a busboy at Defendants' "Sea Fire Grill" restaurant, located at 158 East 48th Street, New York, NY 10017. Plaintiff's employment was terminated by Defendants in or around September 2015.

45.    Throughout his employment by Defendants, Plaintiff ARCOS was required to work the following schedule: Mondays from 10:00 a.m. to 11:00 p.m., Tuesdays from 3:30 p.m. to 1:00 a.m., Wednesdays from 10:00 a.m. to 11:00 p.m., Thursdays from 3:30 p.m. to 1:00 a.m.,

and Sundays from 2:30 p.m. to 12:00 a.m. Accordingly, Plaintiff worked a total of approximately fifty-four and a half (54.5) hours per week. Throughout Plaintiff's employment by Defendants, he was never allowed any mid-shift breaks to eat. Similarly, FLSA Collective Plaintiffs and Class members were not permitted any mid-shift breaks to eat by Defendants.

46.    Throughout his employment, Plaintiff ARCOS's straight time base hourly wage was $5.00.

47.    Plaintiffs ARCOS was required to spend more than two (2) hours or twenty percent (20%) of each shift engaged in non-tipped activities. Specifically, Plaintiff and Tipped Subclass members were required to perform non-tipped tasks, including but not limited to: cleaning the bathroom, sweeping, mopping and vacuuming the restaurant, cleaning the walls, cleaning the "stock" station, polishing silverware and wines and washing dishes; for more than two (2) hours or twenty percent (20%) of each shift.

48.    During Plaintiff ARCOS's employment by Defendants, Defendants promoted and permitted a racially hostile work environment. Due to his race, ethnicity and age, Plaintiff ACROS frequently suffered severe discrimination and related verbal abuse. For example, Plaintiff ARCOS, who was 48 years old at the start of his employment, was frequently called "Abuelo", meaning "old-man" or "grandfather" in Spanish. Plaintiff ARCOS and other Latino employees were also prohibited from speaking Spanish with each other while at work. Additionally, because of his age, Plaintiff ARCOS was not scheduled for the more lucrative weekend shifts on Friday and Saturday nor was he ever offered any promotions.

49.    Defendant's policy of discrimination restricted Plaintiff ARCOS's opportunities for promotion to higher paying positions.  Plaintiff ARCOS and other Latino employees noticed that busboys of Albanian descent were regularly promoted after a month of work, whereas

Plaintiff ARCOS himself and other Latino employees were never offered promotion opportunities despite working at the restaurant for extended periods of time. In Plaintiff ARCOS's case, he worked at the restaurant for a year and a half but was never offered any promotions.

50.    Plaintiff ARCOS and other employees also noted that Defendants racial environment extended beyond just employees and to customers as well. Employees were instructed to seat Black and Latino customers in a dark area in the back of the restaurant, referred to as "the Boots". Employees were instructed to do so because Defendants wanted all Black or Latino customers to be out of sight of the main dining area and other customers.

51.    Defendants never provided Plaintiff ARCOS with wage-and-hour notices, upon hiring, or upon any change to the information on the notice, as required by the NYLL. Similarly, Class Members were never provided with any wage notices.

### Plaintiff JOHNNY RIVAS

52.    In or around July 2017, Plaintiff JOHNNY RIVAS was hired by Defendants to work as a "floor manager" at Defendants' "Sea Fire Grill" restaurant, located at 158 East 48th Street, New York, NY 10017. Plaintiff had applied for a position at "Benjamin's Steakhouse" but instead was employed at "Sea Fire Grill". Plaintiff's employment was terminated by Defendants on August 26, 2017.

53.    Throughout his employment by Defendants, Plaintiff RIVAS worked a schedule that varied. He could work either one of two shifts. The first shift was from 3:00 p.m. to 11:00 p.m., the second was from 4:00 p.m. to 1:00 a.m. Plaintiff RIVAS worked the first shift approximately two days a week and the second shift the other three days, for a total of five days

a week for various days of the week.  Accordingly, Plaintiff worked a total of approximately forty-three (43) hours per week throughout his employment by Defendants.

54.    Throughout his employment, Plaintiff RIVAS was compensated on a fixed salary basis of $1250 per week.

55.    The primary duties of Plaintiff RIVAS and other floor managers was to act as a support to the wait staff. Plaintiff RIVAS was required to actively check in with waiters and step in when they were overwhelmed with work. For those times when Plaintiff RIVAS stepped in to cover the wait staff, which happened every shift and was a major component of Plaintiff RIVAS' duties. He did not receive any tips. Aside from assisting wait staff, Plaintiff RIVAS also helped organize inventory, along with other waiters, and sold wine to customers. Plaintiff RIVAS and other floor managers duties did not include managerial responsibilities with the exercise of independent business judgement. Plaintiff RIVAS could not fire and hire employees. Plaintiff RIVAS also could not set schedules or employee pay rates. Plaintiff RIVAS was misclassified as a managerial employee.

56.    Throughout his employment with Defendants, Plaintiff RIVAS was paid on a fixed salary basis, as he was improperly classified as an exempt employee. Plaintiff RIVAS was never paid an overtime premium for hours worked in excess of forty (40) per week. Plaintiff never received any notice informing him that the fixed salary covered overtime hours. FLSA Collective Plaintiffs and Class Members were similarly compensated on a salary basis and never paid an overtime premium for hours worked excess of forty (40) per week.

57.    Plaintiff RIVAS, similar to Plaintiff ARCOS, suffered due to the racially hostile work environment that Defendants not only permitted but also promoted.

19

58.     When Plaintiff RIVAS was hired, Defendants were under the impression that he was of Italian descent. This was because during his employment interview, Plaintiff RIVAS had mentioned that he can speak Italian. Plaintiff RIVAS also has the physical appearance of someone who could be "white", especially due to his light skin. However, management witnessed Plaintiff RIVAS talking to other employees in Spanish while working and quickly realized that he was actually Hispanic. He was instructed to not speak Spanish while working. On August 26, 2017, a few days after Defendants learned that Plaintiff RIVAS was Hispanic, Plaintiff RIVAS was discharged. He was informed by management that it was because "business was slow" and so they could no longer afford to keep him. However, Plaintiff RIVAS noticed that Defendants' had opened their newest restaurant, Benjamin Prime, earlier that year, suggesting that business was going well. Plaintiff RIVAS was also informed that a new floor manager, of Albanian descent, replaced him days later. For these reasons, and due to other instances of racial discrimination Plaintiff RIVAS both observed and suffered from throughout his employment with Defendants, he believes that he was actually fired because Defendants learned that he was Hispanic.

59.     Throughout his employment, Plaintiff RIVAS was referred to as "Juan" by other employees, although his name is Johnny. The use of this common Latino name rather than his real name was disrespectful to Plaintiff RIVAS and is part of a pattern of discrimination towards Latinos that generalizes all Latinos as a singular stereotype, rather than individuals.

60.     Throughout his employment by Defendants, Plaintiff RIVAS observed Defendant's racist policies towards both employees and customers. He noticed that all front of house employees were from Albania or Montenegro. The only other Latinos that worked there, two busboys, were always in the back cleaning. Plaintiff RIVAS also was instructed, as Plaintiff

ARCOS had, to seat Black and Latino customers in a dark area in the back of the restaurant, referred to as "the Boots". Management also made it clear to Plaintiff RIVAS, as they had to Plaintiff ARCOS, that this practice was intended to prevent other customers in the main dining area from being able to see Black and Latino customers.

61.    While discussing Defendant's racist policies with another employee, he was told by the employee, a busboy, that "they don't hire anyone that is Spanish. We're only here because we're lucky".

### Plaintiffs, FLSA Collective Plaintiffs and the Class

62.    Throughout their employment, Defendants paid Plaintiffs MONTER and ARCOS and the Tipped Subclass at "tip credit" rates below the prevailing Federal and New York State minimum wages.  However, Defendants were not entitled to claim any tip credits under the FLSA or NYLL, because they (i) failed to provide notice that a tip credit was being claimed and (ii) implemented a policy of requiring Plaintiffs and Tipped Subclass members to spend at least two (2) hours, or twenty percent (20%) of each shift engaged in non-tipped activities.

63.    Defendants unlawfully failed to pay Plaintiffs, FLSA Collective Plaintiffs, and members of the Class either the FLSA overtime rate (of time and one-half) or the New York State overtime rate (of time and one-half) for hours they worked in excess of forty (40) each workweek, due to (i) an invalid tip credit, (ii) time-shaving and (iii) misclassification of non-exempt employees.

64.    Throughout his employment, Defendants misclassified Plaintiff RIVAS and misclassified Class Members as exempt managerial employees, when Plaintiff RIVAS' and the Class's work did not include managerial duties and they could not make independent business decisions.

65.     At no time during the relevant time periods did Defendants provide Plaintiffs or Class members with wage notices as required by NYLL. Plaintiffs and Class members received fraudulent wage statements that reflected only their scheduled hours, and not the actual hours worked. With respect to the Tipped Subclass, Defendants also failed to disclose the amount of tip credit claimed in each pay period or the hourly amount of tip credit claimed on the wage statements provided.

66.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT ON BEHALF OF PLAINTIFFS AND FLSA COLLECTIVE PLAINTIFFS

67.     Plaintiffs reallege and reaver Paragraphs 1 through 66 of this class and collective action Complaint as if fully set forth herein.

68.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).  Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

69.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

70.     At all relevant times, each Corporate Defendants had gross annual revenues in excess of $500,000.00.

71.    At all relevant times, the Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiffs MONTER and ARCOS and the Tipped Subclass for their hours worked. As factually described above, Defendants were not entitled to claim any tip credits under FLSA with respect to the Tipped Subclass.

72.    At all relevant times, the Defendants engaged in a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and FLSA Collective Plaintiffs for hours worked in excess of forty (40) hours per workweek.

73.    At all relevant times, the Defendants engaged in time-shaving, refusing to compensate Plaintiff MONTER and FLSA Collective Plaintiffs for all overtime hours in excess of forty (40) that he worked each week.

74.    Plaintiffs are in possession of certain records concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of the Defendants. Plaintiffs intend to obtain all records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

75.    Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

76.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid minimum wages, unpaid overtime wages, and an equal amount as liquidated damages.

77.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW ON BEHALF OF</u>

## <u>PLAINTIFFS AND CLASS MEMBERS</u>

78.    Plaintiffs reallege and reaver Paragraphs 1 through 77 of this class and collective action Complaint as if fully set forth herein.

79.    At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.

80.    Defendants willfully violated Plaintiffs ARCOS and MONTER and Class members' rights by failing to pay them minimum wages in the lawful amount for hours worked. As factually described above, Defendants were not entitled to claim any tip credits under NYLL with respect to the Tipped Subclass.

81.    Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them overtime compensation at the rate of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours each workweek.

82.    At all relevant times, the Defendants engaged in time-shaving, refusing to compensate Plaintiff MONTER and Class Members for all hours that he worked each week.

83.    Defendants failed to provide a proper wage and hour notice, at the date of hiring and annually, to all non-exempt employees per requirements of the New York Labor Law.

84.    Defendants failed to pay spread of hours premium for each shift exceeding ten (10) hours in duration.

85.    Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants their unpaid minimum wage, unpaid overtime premium, unpaid wages resulting from time shaving, unpaid spread of hours premium,

reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## COUNT III

## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

## (RACIAL DISCRIMINATION)

86.    Plaintiffs reallege and reaver Paragraphs 1 through 85 of this Complaint as if fully set forth herein.

87.    The New York State Human Rights Law ("NYSHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race or national origin.

88.    Plaintiffs are employees and qualified people within the meaning of NYSHRL and Defendants are covered employers under the NYSHRL.

89.    Defendants operated a business that discriminated against Plaintiffs in violation of the NYSHRL by subjecting Plaintiffs to a hostile work environment, in the form of constant harassment about their race and age. Such discriminatory conduct by Defendants ultimately led to Plaintiffs' termination by Defendants.

90.    Due to Defendants' violations under the New York State Human Rights Law, as amended, based on discrimination on the basis of race and age, Plaintiffs are entitled to recover from Defendants: (1) compensatory damages.

## COUNT IV

## VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW

## (RACIAL DISCRIMINATION)

91.    Plaintiffs reallege and reaver Paragraphs 1 through 90 of this Complaint as if fully

set forth herein.

92.    The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of an individual's race or national origin.

93.    Plaintiffs ARCOS and RIVAS are employees and qualified people within the meaning of NYCHRL and Defendants are covered employers under the NYCHRL.

94.    Defendants operated a business in New York City that discriminated against Plaintiffs in violation of the NYCHRL by subjecting Plaintiffs to a hostile work environment, in the form of constant harassment about their race and age. Such discriminatory conduct by Defendants directly led to Plaintiff RIVAS's termination by Defendants.

95.    Due to Defendants' violations under the New York State Human Rights Law, as amended, based on discrimination on the basis of race and age, Plaintiffs are entitled to recover from Defendants: (1) compensatory damages, (2) punitive damages and attorneys' fees and costs.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law, and the New York State Human Rights Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of damages to Plaintiffs, retroactive to the date of his discharge and prior, for all lost wages and benefits, past and future, back and front pay, resulting from Defendants' unlawful employment practices and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

d.  An award of unpaid overtime compensation due under the FLSA and the New York Labor Law;

e.  An award of unpaid minimum wages due under the FLSA and the New York Labor Law;

f.  An award of unpaid spread of hours due under the New York Labor Law;

g.  An award of unpaid compensation due to Defendants' policy of time-shaving;

h.  An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice requirements;

i.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation and minimum wage, pursuant to 29 U.S.C. § 216;

j.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime compensation, minimum wage, and compensation for all hours work, pursuant to the New York Labor Law;

k.  An award of compensatory damages due under the New York State Human Rights Law;

l.  An award of compensatory damages due under the New York City Human Rights Law;

m.  An award of punitive damages due under the New York City Human Rights Law;

n.  An award of prejudgment and post judgment interest, costs and expenses of this

action together with reasonable attorneys' and expert fees and statutory penalties;

o.  Designation of Plaintiffs as Representative of the FLSA Collective Plaintiffs;

p.  Designation of this action as a class action pursuant to F.R.C.P. 23;

q.  Designation of Plaintiffs as Representative of Class; and

r.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by

jury on all issues so triable as of right by jury.

Dated: March 1, 2018

Respectfully submitted,

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs, FLSA Collective Plaintiffs
and the Class*

By: */s/ C.K. Lee*
      C.K. Lee (CL 4086)